UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIFELINK FOUNDATION, INC.,
a Florida Corporation,

    Plaintiff,

v.

Case No.: 8:24-cv-00067-KKM-JSS

KSE SCIENTIFIC LLC,
a Delaware Limited Liability Company,

    Defendant.
_____/

**FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff, LifeLink Foundation, Inc. ("LifeLink") through undersigned counsel, as and for its First Amended Complaint against Defendant, KSE Scientific, LLC ("KSE"), states and alleges as follows:

1. This is an action for breach of contract, breach of warranty and violation of Florida's Deceptive and Unfair Trade Practices Act.

**PARTIES, JURISDICTION AND VENUE**

2. LifeLink is a not-for-profit corporation incorporated in the State of Florida and with its principal place of business in Hillsborough County, Florida. LifeLink is therefore a citizen of Florida for diversity purposes.

3. KSE is a limited liability company organized under the laws of the State of Delaware and with its principal place of business in Durham, North Carolina.

4. Upon information and belief, KSE has one member, New ILC Dover, Inc., which is incorporated in the State of Delaware and has its principal place of business in the State of Delaware.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship between LifeLink and KSE and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because the acts alleged herein occurred within this judicial district. Venue is further appropriate pursuant to 28 U.S.C. §§ 89(b) and 1441(a) because this action was originally filed in the Circuit Court in and for the Thirteenth Judicial Circuit, Hillsborough County, Florida, and was removed by KSE to this Court, which is the federal judicial district and division embracing said state court.

**GENERAL ALLEGATIONS**

7. LifeLink is a not-for-profit community service organization dedicated to the recovery of organs and tissue for transplantation therapy. LifeLink Tissue Bank is a division of LifeLink that is accredited by the American Association of Tissue Banks. This division provides tissue recovery services and produces a variety of allografts utilized in the treatment of human patients.

8. Allografts are grafts fashioned from a donor's tissue that are transplanted for therapeutic reasons in another person. They are produced from skin, corneas, bone, tendons, placenta and other tissues. Allografts must be utilized before their expiration dates, which vary according to allograft type and date of production.

9. LifeLink utilizes certain antibiotics in the production of its allografts.

10. KSE is a bioprocess manufacturer that holds itself out as having decades of experience and expertise in designing, sourcing, manufacturing and distributing custom products used in tissue banks and other companies.

11. LifeLink had an ongoing business relationship with KSE starting in 2007, pursuant to which LifeLink placed numerous orders with KSE for antibiotics used to process human tissue into allografts, which KSE filled and for which KSE was paid.

12. KSE was aware that LifeLink intended to and did use the antibiotics it supplied to produce human allografts. In fact, KSE provided LifeLink with its ISO 9001:2008 Certificate of Registration certifying that KSE had been found to comply with the ISO 9001:2008 quality management system standard, which included "Custom Antibiotic Packaging for the Tissue Banking Industry."

13. LifeLink made its first purchase of a polymyxin/bacitracin mix antibiotic product from KSE in June 2007 and made an additional 198 purchases of this product from KSE from 2008 through 2023.

14. LifeLink made its first purchase of a gentamicin antibiotic product from KSE in 2011, and made an additional 70 purchases of this product from KSE from 2011 through 2023.

15. LifeLink made its first purchase of a vancomycin antibiotic product from KSE in 2015, and made an additional 33 purchases of this product from KSE from 2015 through 2023.

16. In furtherance of their business relationship, on or about January 25, 2019, LifeLink and KSE entered into a General Vendor Agreement (the "Agreement") with respect to KSE supplying the antibiotics LifeLink uses to manufacture certain allografts. A true and correct copy of the Agreement is attached hereto as Exhibit "A."

17. The Agreement identifies three antibiotics to be produced and sold by KSE to LifeLink: (1) Polymyxin B/Bacitracin; (2) Gentamicin; and (3) Vancomycin, and specifies the price KSE would be paid for each antibiotic.

18. LifeLink used the antibiotics purchased from KSE in the production of musculoskeletal allografts created from bone and soft tissue and used in spinal reconstruction as well as orthopedic procedures (the "Musculoskeletal Allografts").

19. LifeLink used the antibiotics purchased from KSE in the production of birth tissue allografts, which are created from placental tissue and used in wound care applications (the "Birth Tissue Allografts"). Birth Tissue Allografts must be utilized within 42 days following production.

20. LifeLink is subject to regulations requiring it not to increase the risk of infection to allograft recipients. Specifically, 21 CFR Section 1271.210 provides that LifeLink "must not use supplies and reagents until they have been verified to meet specifications designed to prevent circumstances that increase the risk of the introduction, transmission or spread of communicable diseases."

21. It was crucial that all products supplied by KSE to LifeLink were non-defective and suitable for use in the production of allografts utilized in medical procedures and transplants involving human patients.

4

22. For the same reason, the sterility, efficacy, quality and suitability of the products supplied by KSE to LifeLink needed to be exactly as represented, and the products needed to be free from unknown contaminants, substances, and/or materials, and suitable for use in the production of allografts.

23. During the time it was selling antibiotics to LifeLink, KSE knew or had reason to know of LifeLink's requirements with respect to the antibiotics LifeLink purchased.

24. In furtherance of its ongoing business relationship with KSE and the Agreement, LifeLink sent KSE Purchase Order No. 064641 dated March 3, 2023 for 10 packs of Gentamicin Solution, USP (18/PK). KSE shipped the Gentamicin Solution ordered by Purchase Order No. 064641 to LifeLink on or about March 23, 2023, along with an invoice for the purchase and a Certificate of Analysis of the Gentamicin Solution dated March 27, 2023.

25. In furtherance of its ongoing business relationship with KSE and the Agreement, LifeLink sent KSE Purchase Order No. 065427 dated May 19, 2023 for 10 packs of Gentamicin Solution, USP (18/PK). KSE shipped nine of the ten packs ordered by Purchase Order No. 065427 to LifeLink on or about June 5, 2023, along with an invoice for the nine packs and a Certificate of Analysis of the Gentamicin Solution dated March 27, 2023. KSE shipped the tenth pack ordered by Purchase Order No. 065427 to LifeLink on or about July 19, 2023, along with an invoice for the tenth pack and a Certificate of Analysis of the Gentamicin Solution dated April 27,

2023.  Purchase Order No. 064641 and Purchase Order No. 065427 are collectively referred to as the "Gentamicin Purchase Orders."

26.     In furtherance of its ongoing business relationship with KSE and the Agreement, LifeLink sent KSE Purchase Order No. 064988 dated April 6, 2023 for 10 boxes of Vancomycin HCL 500mg USP (20/BX) (the "Vancomycin Purchase Order").  KSE shipped the Vancomycin HCL ordered by Purchase Order No. 064988 to LifeLink in separate shipments on or about April 6, 2023 and on or about May 16, 2023, along with invoices for the purchase and a Certificate of Analysis of the Vancomycin HCL dated May 27, 2023.  The Certificate of Analysis describes the product as "Vancomycin HCL, USP," which is a representation that the product is acceptable for medical use.

27.     In furtherance of its ongoing business relationship with KSE and the Agreement, LifeLink sent KSE Purchase Order No. 066207 dated August 7, 2023 for 600 units of Antibiotic, Poly/Baci Mix (KSE)(20/BX) (the "Poly/Baci Mix Purchase Order"). KSE shipped the Poly/Baci Mix ordered by Purchase Order No. 066207 to LifeLink on or about August 7, 2023, along with an invoice for the purchase and a Certificate of Analysis of the Poly/Baci Mix.  The Certificate of Analysis describes the product as Polymixin B Sulfate/Bacitracin USP, which is a representation that the product is acceptable for medical use.

28.     The Gentamicin Solution received by LifeLink pursuant to the Gentamicin Purchase Orders, the Vancomycin HCL received by LifeLink pursuant to the Vancomycin Purchase Order, and the Poly/Baci Mix received by LifeLink

pursuant to the Poly/Baci Mix Purchase Order are referred to hereinafter as the "Quarantine/Recall Products."

29. The KSE Certificates of Analysis accompanying the Quarantine/Recall Products represented that the products passed applicable testing requirements and were fit for the purpose for which they would be used, i.e., sterile agents in the processing of the Musculoskeletal Allografts and Birth Tissue Allografts.

30. On or about August 31, 2023, KSE notified LifeLink via e-mail that LifeLink should "quarantine certain KSE products within expiration in LifeLink's possession." The "certain KSE products within expiration in LifeLink's possession" referred to the Quarantine/Recall Products as defined herein. KSE provided no additional information to LifeLink at that time.

31. On September 8, 2023, KSE sent LifeLink a letter to confirm that KSE had directed LifeLink to quarantine all KSE products on September 1, 2023, and informed LifeLink that KSE was working with the FDA to confirm the scope of a recall of its products. KSE provided no additional information to LifeLink at that time.

32. LifeLink made repeated attempts to obtain information from KSE regarding the reasons for the quarantine and potential recall of the Quarantine/Recall Products, but KSE would not provide LifeLink with such information.

33. As a result of KSE's communications directing LifeLink to quarantine the Quarantine/Recall Products, LifeLink could not ship existing Musculoskeletal Allografts and Birth Tissue Allografts that had been produced using the

Quarantine/Recall Products to its customers for distribution and use in treatment of patients. Rather, LifeLink was forced to keep these allografts in inventory pending further instruction from KSE.

34. When LifeLink first received notice from KSE regarding the need to quarantine the Quarantine/Recall Products, it had in its inventory Birth Tissue Allografts produced using the Quarantine/Recall Products, the value of which was approximately $1.16 million.

35. Birth Tissue Allografts have short expiration dates and must be utilized within 42 days of production.

36. All of the Birth Tissue Allografts produced with the Quarantine/Recall Products reached their expiration dates during the quarantine and had to be discarded.

37. On November 21, 2023, KSE notified LifeLink that there would be a recall of its products, including the Quarantine/Recall Products. KSE provided no additional information to LifeLink at this time.

38. As a direct and proximate result of KSE's acts and omissions, including but not limited to KSE's failure to provide LifeLink with Gentamicin Solution, Vancomycin HCL and Poly/Baci Mix that satisfied the conditions of the Agreement, the Gentamicin Purchase Orders, the Vancomycin Purchase Order and the Poly/Baci Mix Purchase Order, as well as the negative but incomplete information KSE provided to LifeLink regarding the Quarantine/Recall Products, LifeLink could not consistently supply its customers with Musculoskeletal Allografts and Birth Tissue Allografts.

39. As a result of KSE's conduct, LifeLink sustained damages that include but are not limited to loss of its Birth Tissue Allografts, which had to be discarded due to the quarantine and KSE's conduct; lost business; lost profits; loss of customer confidence in LifeLink's ability to provide allografts; damage to LifeLink's reputation; and lost sales opportunities.

40. As a result of KSE's acts and omissions, LifeLink was required to change its processing procedures, including obtaining alternative antibiotics suppliers and validating processes, which required conducting testing and other activities necessitated by the issues with the Quarantine/Recall Products.

41. LifeLink's loss of the Birth Tissue Allograft inventory, lost business and sales, lost profits, loss of customer confidence and the costs it incurred in changing its processing procedures because of the quarantine and recall total more than $4.4 million.

42. Despite reasonable efforts, LifeLink was not able to prevent the damages sought herein by cover or otherwise.

43. LifeLink's damages were foreseeable to KSE at the time of contracting.

44. LifeLink has retained the undersigned firm and has agreed to pay its attorneys' fees and costs associated with bringing this action.

## COUNT I - BREACH OF CONTRACT

45. LifeLink realleges paragraphs 1 through 44 above.

46. By virtue of the Agreement, the ongoing relationship between and conduct of LifeLink and KSE over the years, and the Gentamicin Purchase Orders, the Vancomycin Purchase Order and the Poly/Baci Mix Purchase Order, there was a valid contract for the sale of goods between LifeLink and KSE, pursuant to which KSE agreed to provide certain antibiotic products to LifeLink suitable for the production of allografts.

47. LifeLink has at all times performed its obligations pursuant to its ongoing business relationship with KSE, the Agreement and the purchase orders submitted to KSE, including payment of KSE's invoices for KSE's products.

48. KSE notified LifeLink that the products provided pursuant to the Gentamicin Purchase Orders, the Vancomycin Purchase Order and the Poly/Baci Mix Purchase Order had to be quarantined and later recalled.

49. That is, KSE itself stated that the Gentamicin Solution, Vancomycin HCL and Poly/Baci Mix it sold to LifeLink pursuant to the Purchase Orders were not suitable for and could not be used by LifeLink to produce allografts.

50. KSE materially breached its agreement with LifeLink by failing to provide Gentamicin Solution, Vancomycin HCL and Poly/Baci Mix that were suitable for and could be used to produce allografts.

51. As a direct and proximate result of KSE's breaches, as described herein, LifeLink has suffered damages.

WHEREFORE, LifeLink requests that the Court enter a judgment against KSE and in favor of LifeLink for damages including, but not limited to, lost inventory and profits resulting from KSE's failure to provide LifeLink with Gentamicin Solution, Vancomycin HCL and Poly/Baci Mix suitable for use in producing allografts, plus interest, costs, and such further relief as the Court deems proper.

**COUNT II – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

52.     LifeLink realleges paragraphs 1 through 44 above.

53.     KSE is a merchant with respect to the Quarantine/Recall Products.

54.     Pursuant to Fla. Stat. § 672.314, an implied warranty that the Quarantine/Recall Products were merchantable was implied in the contract for their sale to LifeLink.

55.     Pursuant to Fla. Stat. § 672.314, in order to be merchantable, the Quarantine/Recall Products were required to, inter alia, pass without objection in the trade under the contract description, be fit for the ordinary purposes for which they were sold, and conform to the promises and affirmations of fact made on the container and labels.

56.     The KSE documentation accompanying the Quarantine/Recall Products contained promises or affirmations of fact, including, but not limited to, the fact that the Quarantine/Recall Products were sterile and that they were the antibiotics represented on the specific label and container, suitable for us in producing allografts.

57.     As set forth herein, KSE breached said warranty as the Quarantine/Recall Products did not pass without objection in the trade under the

11

contract description, were not fit for the ordinary purposes for which they were sold and did not conform to the affirmations of fact made on the container and labels.

58. KSE itself notified LifeLink that the Quarantine/Recall Products were not merchantable and could not be used in the production of allografts; therefore, notice from LifeLink was unnecessary.

59. As a direct and proximate result of said breaches, LifeLink has suffered damages.

WHEREFORE, LifeLink requests that the Court enter a judgment against KSE and in favor of LifeLink for damages including, but not limited to, lost inventory and profits resulting from KSE's failure to provide LifeLink with Gentamicin Solution, Vancomycin HCL and Poly/Baci Mix that were merchantable, plus interest, costs, and such further relief as the Court deems proper.

## COUNT III – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

60. LifeLink realleges paragraphs 1 through 44 above.

61. This is a claim for violation of Florida's Deceptive and Unfair Trade Practices Act, § 501.201, et seq., Fla. Stat. ("FDUTPA").

62. The Florida Deceptive and Unfair Trade Practices Act prevents unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.[1]

---

[1] Under Florida's Deceptive and Unfair Trade Practices Act, the prevailing party is entitled to recover its attorneys' fees and costs.

63. FDUTPA expressly prohibits business entities, including KSE, from engaging in deceptive methods of business activities, unconscionable acts, and unfair practices in the conduct of trade or commerce.

64. Further, a practice violates FDUTPA when it offends established policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, competitors, or other businesses.

65. The purpose of FDUTPA is to protect consumers, including LifeLink, from entities who engage in, inter alia, unfair or unconscionable acts in conducting any trade, business, or commercial pursuit.

66. LifeLink is a "consumer" within the meaning of Fla. Stat. § 501.203(7).

67. KSE is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

68. In violation of Fla. Stat. § 501.204, KSE engaged in deceptive acts and unfair practices by agreeing to provide LifeLink with Gentamicin Solution, Vancomycin HCL and Poly/Baci Mix that were suitable for and could be used in the production of allografts while concealing or refusing to provide information to LifeLink related to the reason(s) for the quarantine and recall.

69. Specifically, following the notice to quarantine and recall, LifeLink attempted to obtain additional information regarding the reasons for the quarantine and recall so that it could evaluate whether it could safely distribute the Birth Tissue Allografts.

70. KSE was aware of the nature of the product issues or defects resulting in the quarantine and recall.

71. Despite this knowledge and repeated requests from LifeLink for additional information, KSE concealed and/or refused to disclose the underlying cause of the recall, thereby precluding LifeLink from performing its own risk assessment to determine whether the Birth Tissue Allografts could be safely distributed and utilized before they reached their expiration dates and had to be destroyed.

72. KSE's actions regarding the provision of Quarantine/Recall Products were unfair, deceptive and/or unconscionable within the meaning of Florida Statute § 501.201 et. seq.

73. As a direct, proximate, and foreseeable consequence of KSE's violations of Fla. Stat. § 501.204, LifeLink has suffered direct damages based on the lost profits for undeliverable and expired allograft products, in addition to reputational damages.

WHEREFORE, LifeLink demands judgment against KSE determining that it violated Florida's Deceptive and Unfair Trade Practices Act, awarding it damages, including but not limited to, loss of its Birth Tissue Allograft inventory, and lost profits, plus interest, costs, and attorneys' fees pursuant to Florida Statute § 501.201 et. seq., and for any further relief this Court deems appropriate and just.

## **DEMAND FOR JURY TRIAL**

LifeLink demands a jury trial on all issues and claims so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 18, 2024, a true and correct copy of the foregoing First Amended Complaint and Demand for Jury Trial was served to all parties receiving CM/ECF notification via the Court's CM/ECF system.

/s/ Richard M. Hanchett
RICHARD M. HANCHETT
Florida Bar No. 709212
rhanchett@trenam.com / ac@trenam.com
BRIGID A. MERENDA
Florida Bar No. 320500
bmerenda@trenam.com / ranctil@trenam.com
BRENTON M. TUNIS
Florida Bar No. 1051230
bmtunis@trenam.com / jcharles@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
 FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Boulevard, Suite 2700
Tampa, FL 33602
(813) 223-7474
Attorneys for Plaintiff



**LifeLink Foundation
General Vendor Agreement**

This AGREEMENT ("Agreement") is entered into on the 25 day of January, 2019 ("Effective Date") by and between KSE Scientific ("Vendor") and LifeLink Foundation, Inc. ("LifeLink").

In consideration of the mutual covenants contained herein and intending to be legally bound, the parties agree as follows:

1. Either party may terminate the Agreement with or without cause and without penalties by giving at least 30 days prior written notice. In the event that LifeLink terminates the Agreement prior to expiration date, LifeLink agrees to pay the actual cost(s) of the service(s) rendered and received up to the termination date.

2. The initial term of the contract will be for three (3) year(s). During the first two (2) year(s), there will not be a price increase. During the final year, no more than a 3% increase may be exercised. Upon expiration of the initial term, the Agreement shall automatically renew for successive one (1) year periods subject to the termination provisions found in Section 1.

3. The Vendor hereby agrees to indemnify and hold harmless LifeLink in respect of any and all claims, losses and expenses (including reasonable fees and disbursements of counsel, before and at trial, and in bankruptcy, probate and appellate proceedings) which may be incurred by LifeLink arising out of (i) the negligence or willful or intentional misconduct of the Vendor, or (ii) any breach by the Vendor of any of its representations, warranties, covenants or agreements made in this Agreement. LifeLink hereby agrees to indemnify and hold harmless the Vendor in respect of any and all claims, losses and expenses (including reasonable fees and disbursements of counsel, before and at trial, and in bankruptcy, probate and appellate proceedings) which may be incurred by the Vendor arising out of (i) the negligence or willful or intentional misconduct of LifeLink, or (ii) any breach by LifeLink of any of its representations, warranties, covenants or agreements made in this Agreement.

4. Vendor hereby agrees that all services or work considered under this Agreement shall not be performed by sub-contracted vendors or providers without the written consent of LifeLink in advance of such performance. Additionally, for products or services provided to the LifeLink Tissue Bank, including its facilities in Georgia and Puerto Rico, the Vendor hereby agrees to provide notification within seven (7) business days of any change in the specifications or quality of the services and products anticipated hereunder this Agreement. In accordance with American Association of Tissue Banks Standard K1.300 Purchasing Controls, AATB accredited tissue banks must be notified of such changes to determine if the change will adversely impact the quality and specifications of its human tissue allografts.

5. Until the expiration of four years after the furnishing of services pursuant to the Agreement, Vendor shall make available upon written request of the Secretary of the Department of Health and Human Services or the Comptroller General of the United States, or any of their duly authorized representatives, the Agreement and this Addendum and any books, documents, and records of Vendor that are necessary to certify the nature and extent of costs incurred by LifeLink under the Agreement.

6. The Agreement shall be construed in accordance with the laws of Florida notwithstanding any conflict of laws provisions to the contrary.

7. Vendor hereby represents and warrants that it is not now, and at no time has been, excluded from participation in Federal healthcare programs, including Medicare and Medicaid. Vendor agrees to immediately notify LifeLink of any threatened, proposed, or actual exclusion from participation in any Federal healthcare program, including Medicare and Medicaid. In the event Vendor is excluded from participation in any Federal healthcare program during the term of the Agreement, or if at any time after the effective date of this Agreement it is determined that Vendor is an excluded entity, this Agreement shall automatically terminate.

**EXHIBIT A**

01/28/2019

1

LifeLink General Vendor Agreement v 2.2-auto



LifeLink Foundation
General Vendor Agreement

8. The required method of payment by LifeLink for the services provided herein is a VISA credit Card. **No Service or Convenience fees may be charged to LifeLink Foundation.**

9. This Agreement, including all pricing documents, Schedules, Addendums or Exhibits, contains the entire understanding and agreement of the parties hereto and supersedes any prior or contemporaneous oral or written agreements or representations.

10. Total cost of service anticipated under this Agreement equals: $_____

11. Conflict of Interest: Conflict of Interest is a relationship between the vendor employees and/or representatives and LifeLink Foundation staff wherein a personal benefit could result from the business relationship. A conflict of interest does not preclude a business relationship but must be disclosed.
    a. Does any LifeLink staff or board member receive payments for services from vendor? **Please answer Yes or No. If yes, please explain.** No
    b. Does any employee, owner, board member, or any other representative of Vendor have a personal or familial relationship with LifeLink Foundation staff or Board Member? **Please answer Yes or No. If yes, please explain.** No

Cost of Product
98-168-RS Polymyxin/Bacitracin     $17.06 Each
98-530-RS Gentamicin               $489.71/18
98-216-RS Vancomycin               $1001.03/20

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

| VENDOR | LifeLink Foundation, Inc. |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: JAMES LAWY | Name: Brad Bassler |
| Title: DIRECTOR | Title: V.P. Operations |
| Date: 1-28-2019 | Date: 1/29/19 |